Okay, our next case on the docket is Gordon v. United States of America and for appellants, we have Mr. Richard Johnson, Rapeli Vanessa Waldreth. Is that right? We thank you both for being here. You both get some travel goals stars for coming from Yakima and Spokane. So thanks for your travels and your briefing and we'd like to hear your argument. Thank you, Your Honor. If the court please. I'm Richard Johnson. It's my privilege to represent Jeffrey and Vicki Gordon. We're here in court this morning. I'd like to reserve two minutes for questions. The U.S. D.A.'s federal crop insurance programs going back into 2003 and 2004 and before and since and the thing that brought this this case to the fore was that the USDA through in this case a special investigator named Tillotson decided that he was going to look into a theory of conspiracy by growers and packers and insurance agent to defraud the government under this crop insurance program based upon alleged untrue statements involving Norcota variety russet potatoes. So what the record in this case shows is that in one year in which our clients were supposedly engaged in trying to defraud the government, 2004, they did not even grow Norcota variety potatoes. And then in the year previous, the 2003 claim in which they were supposedly engaged in trying to defraud the government, the evidence in the case clearly showed and the district judge, Judge Shea, ruled in his acquittal of Jeffrey Gordon on count six post-trial that there was no way under the facts of the case that the Gordons could have made out any kind of a claim or the government could have conceived there was a claim in 2003 for a viable crop insurance loss. So despite the government knowing pretty much everything about the Gordons' lives, going back many years before, there were sirens in the background, 2003, 2004. We'll give you an extra 30 seconds to cover siren risk. And what I was referring to is, you know, when when you apply for these programs, you know, the government knows pretty much all about you. They've got your federal income tax returns, they've got all your crop reports, all your applications, you know, your submissions to the government about what kind of seed you planted, what kind of a question about your complaint, because if I'm remembering, this just got dismissed at the 12B1 or 6th stage, I can't remember now. Under 12, 12. Yeah, one of those rule 12 motions. But so I look at your complaint and I read our cases as saying in order to bring a malicious prosecution claim under the FTCA, which is what you eventually have decided to try to do, you pretty much have to allege some kind of egregious misconduct on behalf of the investigator here. This agent Tillotson, is that how you say his name? Tillotson, I think. Just the agent. I haven't met the man because, Your Honor, we never had any chance for any discovery in this case. Well, right, but that's the whole purpose of a 12, you know, a 12B motion is that you've got to be able to plausibly allege the facts necessary to meet the legal standard. And so, and you, it seems to me you kind of did, you say that the the agent got your misleading testimony. So, you know, obviously if the agent got up before the grand jury and lied, deliberately lied as an attempt to frame your clients, it seems to me that would easily meet the standard and would allow you to go forward, right? But when I studied your complaint, I didn't see any factual allegations. I mean, that's just kind of a conclusion that you allege there in paragraph 2.15. But I didn't see any underlying factual allegations that made that conclusion plausible. And I wanted to hear more about what you can point to in the complaint that shows that that agent got up there and knew when he testified before the grand jury that your client had committed this or that offense, that he knew at that point that that was flat-out false. Well, actually, Your Honor, we had to amend the complaint to get down to where we got to the malicious prosecution action, which is clearly recognized under the substantive law of the state of Washington. Right, I'm looking at your amended complaint. And so I'm telling you that I certainly would agree with you that your claim should go forward if you had plausibly alleged that the agent lied before the grand jury, deliberately gave false testimony. And all I'm asking you, I have it right in front of me, what can you point me to in terms of the underlying factual allegations that make that conclusion plausible? Well, that the agent, and this is in the context too, Your Honor, that the agent starts testifying before the grand jury in, I believe, July 2005 at a time when our client's crop insurance claims in 2003 and 2004 had actually been forced to go to arbitration with the government, in which my clients prevailed, and the government paid them after they required them to sign a mutual release of liability of the government and my clients. Let me just be more specific, because your general statements are not helping me. What I would need under Twombly and Iqbal is for you to be able to point me to what's in the complaint that says, before the grand jury, the agent said the following. Here's why he knew that that was false. And I'm telling you, I've read your complaint several times, and I don't see any allegations that come remotely close to doing that. And what I'm asking you is to tell me where in the complaint I should look at, because you're just talking up here, it doesn't help. What I need to do is look at the four corners of what you said. Is there sufficient support for the conclusion you've alleged? Well, I believe, Your Honor, that in the amended complaint, the allegations that we made, and as I understand it, we do have notice pleading, you know, in federal court. Twombly and Iqbal quite dramatically changed that, not in a way that I think was favorable, but that's the law, and that's what we have to apply. But my allegations in my complaint are actually outlined in my reply brief, in which I state and I allege that the special agent knew that what he was telling the grand jury about a conspiracy theory about Norcota variety potatoes had to be a lie, especially in 2004, when we didn't even grow those potatoes. And how do you get in front of the grand jury and about that kind of a product when we didn't even grow it and he knew that? Well, I read the agent's grand jury testimony. I don't know if we have the full, whatever you gave us, because you guys had access to it, and I read through all of the testimony that you provided our court, and all I remember is, I mean, the agent's testimony about your claim wasn't that, it wasn't a whole lot of it actually, right? Well, we don't, that's the point, Your Honor. We don't think we should have ever been involved in this. Anybody can do basic math skills, knew we would have been false in the first place, yet we're dragged into a 40-day trial and spend $300,000 of our money to defend ourselves, you know, to have the judge dismiss one count against us after the government rested, because no juror could convict anybody on the evidence the court had, and then being acquitted on the other count by Judge Shea after trial. Okay, how about this? I have the grand jury testimony in front of me. Some of which is redacted. Yes, exactly, and I don't know, again, if we have, it says excerpt, so I don't know if we have the full, but is there something, what's the best statement that you're going to point me to right now from the agent that you say he had to know was false, just like the specific testimony he offered? May I make a suggestion, counsel? There's about two minutes left. If you'd like, you could preserve some time for rebuttal. I would. And then you're, that period of time before you have to get up on rebuttal, you could try to locate the statement that would respond to Judge Watford, if that's okay with him. Yes, that's a good idea. Thank you. Okay, let's proceed that way. Now, Ms. Waldreth. May it please the court, my name is Vanessa Waldreth on behalf of the United States. There are two issues before the court today that both support affirming the district court's dismissal of this case. First, the Federal Tort for claims that fall within the discretionary function exception. Mr. Gordon's allegations regarding Special Agent Tillotson's actions in his investigation and grand jury testimony that led to the crop fraud prosecution fall squarely within the DFE. Second, the district court in ruling that the discretionary function exception applied used the correct standard. Under a 12b1, which was the basis for the court's dismissal motion, that challenges the jurisdiction of the court, a court may look outside the pleadings to resolve factual disputes relating to jurisdiction. And these factual determinations are reviewed for clear error. As Judge Watford was raising earlier, the amended complaint and the plaintiff's responsive briefing before the district court did not cite to any testimony by Tillotson as affirmatively false or misleading. The district court's order specifically made that factual finding. The district court also ruled that the preponderance of the evidence indicates that Tillotson's investigation and grand jury testimony were discretionary and susceptible to policy analysis. Well, not if he lied. That's the problem, right? I mean, if he said something before the grand jury to get Mr. Gordon indicted that was false and that he knew was false, then obviously that's outside the right. I mean, that claim can go forward. Yes, Your Honor. To the extent that the plaintiff has made allegations that Special Agent Tillotson that would fall outside of the discretionary function exception, and I agree, perjury, unlawful conduct, those fall without outside of the discretionary function exception. But those allegations are not made here, and those facts were not presented to the district court at the motion to dismiss stage. But something went badly wrong here. You'd have to agree with that in light of what – is it Judge Shea who was the judge at the criminal trial? Yes. I mean, that's – I'm just trying to put together the pieces, because the case, as I understand it, against Mr. Gordon just completely fell apart or maybe was never there, and that's – that was the basis for the judgment of acquittal. The court eventually did acquit the two counts that were made against Mr. Gordon. Count one was the larger conspiracy charge that resulted in a mistrial, but then was later ruled – Judge Shea acquitted Mr. Gordon as to that issue. The case involved investigation of an alleged criminal conspiracy that used highly suspicious contracts which had no known purpose in the potato industry. Those were facts that Special Agent Tillotson conveyed to the grand jury at the request of federal prosecutors who brought the grand jury, presented the evidence, and requested the indictment. So Special Agent Tillotson's actions here are involving his investigation at the – through the involvement of the Office of the Inspector General, and then his involvement at providing grand jury testimony, which was at the direction and request of federal prosecutors who felt that there was sufficient probable cause relating to these crop – Well, let me just tell you. This is what I remember from the grand jury testimony. Tell me if I'm remembering this wrong. I remember most of it being directed at other people. And what the agent laid out is that, hey, we've discovered this series of contracts, just as you described, that we can't think of any legitimate reason why any potato grower would do this. And it then leads to these claims, and we think, you know, these claims against, I guess, some kind of insurance, crop insurance program. And we think that, you know, these people were basically just defrauding the government, I guess, was it, ultimately? Yes, Your Honor. It was a federal crop insurance program. Okay. And then what I remember, he had very little testimony, as I recall, about Mr. Gordon, at least in the excerpts that we had. But he basically just said, and as to this other gentleman, we found similar suspicious contracts, and so we think he must be in on it with them, too. That's kind of what I remember. That's correct, Your Honor. And then what's been provided before this Court are, you know, small pieces of the grand jury testimony and excerpts. Mr. Gordon has been provided with the full grand jury testimony, and we made sure that that was available both, obviously, in the criminal trial before trial and here in this malicious prosecution case. So Mr. Gordon has had the opportunity to review all of that grand jury testimony and try to identify any statements by Special Agent Tillotson that are false or misleading. And what Mr. Gordon has instead focused on is saying, these don't provide a full and complete explanation of everything possible before the grand jury. And that's not the question that's before the Court today. The Court today is evaluating whether or not Special Agent Tillotson's actions, as alleged in the amended complaint, fall outside of the discretionary function exception. And the rulings regarding investigations by Special Agents and testimony by Special Agents that are, you know, at the request and brought by Federal prosecutors are squarely within the discretionary function exception, unless the plaintiff can point to any fact or action that takes us outside of that discretion. But you would concede that if an agent goes before the grand jury and testifies to facts A, B, and C, all three of which are true as a technical matter, right, he didn't deliberately lie about A, B, and C existing, but he is also aware of facts D, E, and F, which, if you put all six of those together, would completely dispel any, you know, suspicion about facts A, B, and C. If he goes there and just tells the grand jury about A, B, and C and mentions nothing about D, E, and F, that would take you outside the discretionary function exception, wouldn't it? Even though you didn't deliberately lie, but you went up there and you knew, I'm only going to give them half the story, and that's going to mislead them into thinking that this person did something wrong, when, in fact, if they knew about the other three facts, they would clearly come to a different conclusion. That would take you outside the exception, wouldn't it? The district, the D.C. District Court in Moore v. Vaulder and Gray v. Bell examined questions similar to that, and they, the District Court, excuse me, the D.C. Circuit ruled that even in those situations where there are potential misrepresentations, those are quintessential discretionary functions if it's part of the prosecuting attorney's decision about what evidence to present to the grand jury and what, you know, the materiality and the potential exculpatory nature of those decisions are a prosecutor's ultimate discretionary choice. So to the extent that Special Agent Tillotson is providing truthful and accurate answers here, and the facts that you present are not the facts here, we've been provided no citations to the grand jury testimony where there's an opportunity for Special Agent Tillotson to provide further information that he may or may not have known and should have known at that time, the discretionary function exception still applies even in situations where there could have been an abuse of discretion. And that, here we are solidly within the political and policy choices that are the second step of the analysis of the discretionary function exception, as laid out in the Galbert and Berkovitz test. Because first of all, there has been no dispute by Mr. Gordon that there's any constraint on Special Agent Tillotson's investigation or grand jury testimony that would take us out of that first step one of the Galbert or Berkovitz test. And then the step two of the discretionary function exception test under Berkovitz looks at, are we looking at considerations of social, economic, or public policy, and what questions a prosecutor is asking a special agent at the grand jury fall squarely within those considerations of social, economic, public policy, and what criminal prosecutions to eventually pursue, and second-guessing those at a malicious prosecution claim under the FTCA is exactly what  we're looking at. Counsel, I have a question for you, if I may. Does the record indicate whether the appellants made any requests to the district court after they were totally dismissed here to have fees awarded against the government as some sort of sanction for their actions? No, Your Honor. There were not any requests under the Hyde Amendment or other circumstances that I'm aware of, Your Honor. Okay. Thank you. Are there no other questions? Okay. Thank you very much. Judge Gould, I did not represent the Gordons at that time. I believe there wasn't any post-trial motion made at that time. Was not? Was not made by previous counsel. Although, we do ask for fees in our complaint and tort claim. So what I was wondering is just, you know, it could be possible that under the law that your clients don't have a remedy against this agent if what was done was in that discretionary function, exception which destroys jurisdiction. But the court could have jurisdiction, could have discretion, maybe to grant fees, except I guess if there was no subject matter jurisdiction, they couldn't do that then. I think that's right. And I think there is a, I can't remember the name of this case. I think it was too late by the time I got involved in the case to do it. Okay. Thank you. I did find, Judge Watford, I'm referring to excerpts of the record, page 138 and 139. And this is the amended complaint. And starting at paragraph 2.23, going through paragraph 2.27, there's the allegations that we made with regard to the misconduct and deceitful testimony of the special agent. Counsel, we'll give you another minute. We'll give you another minute because I took up your rebuttal time. Thank you, Your Honor. Just say the pages again. 134, did you say? 138 and 139, paragraphs 2.23 through 2.27. Got it. Okay. I will study those carefully. These are outlined in our reply brief as well on pages 3, 4, 5, and 6. It's our position that the Robinson case does not apply here and that the court should apply the Augustine v. U.S. case, that this district court should not have gone ahead under Rule 12 and dismissed this case. This case should have been converted to a summary judgment motion. We clearly presented facts that would defeat a summary judgment motion. This case should be remanded to the district court for further proceedings, including discovery and the right to trial. Are there no further questions? Let me just ask Judge Watford, because I took up some of the time on the issue of concern to you. Do you have any other questions? No. No, thanks. Counsel, I think we'll thank you and thank Mr. Johnson, and we'll thank Ms. Waldron, again, to both of you for your fine arguments and for your travels here. So the case of Gordon v. United States of America is submitted, and we will now consider this matter concluded for now, and the court will take a 10-minute recess.
judges: Gould, Watford, Rothstein